[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter first came to this court by summons and complaint dated July 2, 1998 and returnable July 28, 1998, claiming a dissolution of the marriage, alimony, custody and support of the minor children, an allowance to prosecute, change of name, a property settlement under Section 46b-81 and such other relief as the court deems fair and equitable.
Attached to the complaint were automatic orders and preliminary motions along with the Plaintiff's financial affidavit.
The Defendant appeared by counsel on August 10, 1998.
The Defendant filed an answer and a cross complaint on August 12, 1998, in which cross complaint the Defendant claimed a dissolution of marriage, joint legal custody of the minor children, an equitable property settlement and such other relief as may be appropriate. The file reflects that on July 6, 1998 and on September 2, 1998, applications for relief from abuse were filed and in due course acted on by the court, Solomon, J., after agreement and/or consent of the parties.
The parties, with their respective counsel, and witnesses appeared before the court on January 5, 1999 and January 6, 1999 and were heard.
At the outset of the hearing, the attorney earlier appointed for the minor children, Attorney Ramona E. DeSalvo, appeared before the court and advised the court as to the best interests of the two minor children in accord with certain agreed issues as to custody, primary residence and visitation.
The Court makes the following findings of fact.
The Plaintiff, whose maiden name was Karen Jay Koziel, and CT Page 1175 the Defendant intermarried in Jewett City on October 7, 1989.
Both parties have resided in this state for more than one year prior to the date of the complaint. Neither party is in the military service of the United States. The Plaintiff and the Defendant have two minor children issue of their marriage; namely, Courtney L. Kinney, born May 14, 1993, and Zachary M. Kinney, born May 15, 1995. Neither party is or has been the recipient of public welfare. The marriage has broken down irretrievably with no reasonable prospect of reconciliation.
The Plaintiff is age 32, is in good health, is a high school graduate plus education and training to become a paralegal for 2 years. The Plaintiff is employed as a legal secretary at the law firm of Waller, Smith Palmer in New London, a position she has had for the last six years. Prior to her present position the Plaintiff had been employed as a paralegal for four years with other law firms in the area. Plaintiff's daily working hours are 9:00 a.m. to 5:00 p. m., no luncheon break. Approximately one month ago, Plaintiff lost her overtime compensation.
The oldest child, Courtney, is in kindergarten, and the child, Zachary, is in daycare. The Plaintiff presently pays $100.00 per week for daycare during the school year, and somewhat more during the summer.
Earlier, pendente lite orders as to support were $137.00 and temporary alimony of $70.00.
The parties are the joint owners of a certain residence known as 41 Kanahan Road in Lisbon, which was purchased by the Plaintiff and Defendant from the estate of the Plaintiff's father at a price of $115,000.00.
There is a first mortgage on the premises to the Chelsea Groton Savings Bank in the original principal amount of $66,000.00.
There is a second mortgage taken out in January 1998 on the premises to the Charter Oak Federal Credit Union in the original principal amount of $31,600.00.
When the residence was initially purchased, the purchase price was paid in the following manner. CT Page 1176
The sum of $28,750.00 was paid by the Plaintiff from assets acquired from her father's estate. First mortgage proceeds of $66,000.00; the further sum of $21,283.00 from the purchasers jointly. (See Plaintiff's Exhibit #1.)
The Plaintiff had received the total sum of $53,000.00 from her father's estate in January 1996.
The difference between the $53,000.00 and the $28,750.00 applied on the purchase of the home was spent on paying joint bills and household needs and furnishings.
This marital union was the first for the Plaintiff and the second for the Defendant.
The second mortgage proceeds were initially envisioned to be used for home improvements, but ended up being spent on an expensive Dodge Ram truck, which cost $25,000.00 plus.
The Plaintiff has been trying to keep both the first and second mortgages current even though she has no motor vehicle in her possession.
The parties earlier had a 1995 Jeep Cherokee motor vehicle which was repossessed by the lien holder bank but was redeemed by the Defendant.
The 1995 Jeep is now in the possession of Lisa Bennett, the Defendant's friend, who also now holds title and registration to the same subject to the lien holder's interest.
The Plaintiff presently relies on a used motor vehicle, a Ford Mustang, on loan from Plaintiff's sister, as her means of transportation.
When the Defendant left the residence of the parties, he took his tools, between 200-300 CD discs, between 100-150 video tapes, an entertainment center allegedly worth $7,000.00, plus an allied stereo sound system and a recliner.
In 1998, the Defendant received a $1,000.00 bonus from his employer.
The Plaintiff has recently undergone certain dental or orthodontic work or procedures which have been covered by the CT Page 1177 Defendant's insurance, but which have required advance payment by the Plaintiff. Insurance reimbursement checks have been received by the Defendant, but he has not reimbursed the Plaintiff for her cash advances.
The residence of the parties at 41 Kanahan Road had been owned by the Plaintiff's parents for 30 years prior to their acquisition of the same.
There have been arguments between the parties and the Defendant has addressed the Plaintiff in vulgar terms and with unchaste comments.
There have been instances of verbal abuse and threats directed at the Plaintiff by the Defendant.
At Easter time, 1998, the Defendant disclosed to the Plaintiff that he was in love with one Lisa Bennett and intended to live with her, and the Defendant does now reside with Lisa Bennett and her three children.
According to testimony, the oldest child, Courtney, is a highly strung and emotional child.
Both children apparently miss their father being in the home.
At the time that the Plaintiff attended the University of New Haven, incident to securing her paralegal diploma, it is unclear who paid for the tuition and expenses from the testimony.
The Defendant, who formerly worked at Electric Boat, was laid off from that position in November 1996 and has not been recalled. While employed at Electric Boat, the Defendant earned as much as $40,000.00 — 45,000.00 annually, according to the testimony.
There is a dispute over whether a recall notice was ever sent to the Defendant, but the evidence on that point is unclear.
The 1995 Jeep motor vehicle was at the Plaintiff's home when it was repossessed by the bank.
Prior to its repossession, the Plaintiff acknowledged removing certain specialty items from the vehicle and selling them for $500.00 because she needed cash. CT Page 1178
At the time of trial, it was indicated that the Plaintiff had established a friendship with one David Tarrent, who accompanied her to court but did not testify.
This friendship occurred after the Plaintiff and Defendant separated.
The Plaintiff was surprised when the Defendant advised her that he had found someone else.
The Plaintiff feels she has worked hard to preserve the home and provide for the children.
In an effort to keep bills and expenses paid, the Plaintiff exhausted the children's inheritance of $4,000.00.
The Defendant has held his present position with the Mashantucket Pequot Tribal Nation for one year.
The Defendant acknowledged residing with Lisa Bennett and her children.
After the 1995 Jeep repossession, the Defendant bought it back at auction for $3,000.00.
The Defendant believed stress in the marriage began and occurred when the parties purchased the home from her father's estate.
At the time of the Defendant's departure from Electric Boat, he had an S.S.I.P. worth about $10,000.00, which he took out and spent for various expenses and some claimed improvements to the residence.
The Defendant vacated the residence in February or March 1998.
It is the Defendant's position that the problems in the marriage developed due to the Plaintiff being depressed, not being demonstrative in affection or intimacy.
The Defendant claims that the Plaintiff threw things at him in anger and drank alcohol to excess. CT Page 1179
The Defendant met Lisa Bennett in August 1997 and moved in with her in March 1998.
Defendant pays Bennett $400.00 monthly as rent.
Lisa Bennett loaned the Defendant $2,200.00 cash in order to assist him in securing repossession of the 1995 Jeep.
The Defendant assists Ms. Bennett with utilities and heating fuel to the amount of $60.00 monthly.
Ms. Bennett testified that the registration for the 1995 Jeep is now in her name.
Ms. Bennett has three children ages 14, 13 and 4.
From the exhibits and the financial affidavits of the parties, the Court makes the following findings and observations.
As to the Defendant's financial affidavit, weekly gross income from his position of surveillance for the Mashantucket Pequot Tribal Nation is $537.00. Itemized deductions, Federal, State, FICA, insurance $124.00. Net weekly wage $413.00. Claimed weekly expenses including the pendente lite orders of support and alimony $507.77.
The Defendant shows credit card and other debt of $18,300.00.
The Defendant values the residence at 41 Kanahan Road at $135,000.00 with mortgage debt of $95,000.00, for a joint equity of $40,000.00.
The Defendant shows two motor vehicles on an earlier affidavit, a 1995 Jeep valued at $20,000.00, with a loan balance of $17,000.00. (Note: This is the same vehicle now according to testimony in the name of Lisa Bennett) and a 1998 Dodge 1500 Ram valued at $25,000.00 free and clear.
The Defendant values household items at $20,000.00.
There are no other assets shown by the Defendant of any consequence.
As to the Plaintiff's financial affidavit, weekly gross income from her position as a legal secretary of $446.14. CT Page 1180 Itemized deductions, Federal, State, Social Security and Medicare of $136.39. Net weekly wage $309.75 from employment, pendente lite orders for support and alimony $207.10, deduction from support and alimony $12.00, net $195.00.
Total net weekly, $504.75.
Itemized weekly expenses $829.05. The Plaintiff shows credit card and other debt of $21,872.00.
The Plaintiff values the residence at 41 Kanahan Drive at $115,000.00 with mortgage debt of $92,266.00 for a joint equity of $22,734.00.
The Plaintiff shows the motor vehicles, the 1995 Jeep and the 1998 Dodge Ram, although the testimony reflects that she does not hold title to the vehicles.
Plaintiff values the furnishings of the home at $4,400.00.
The Plaintiff has a 401K plan valued at $10,000.00.
As to the exhibits
The Defendant claims all of the items shown on Defendant's Exhibit A which is set forth herein.
ITEM VALUE
Computer and Desk $5,000
Bedroom Set $3,500
Refrigerator $1,300
Living Room Set $1,200
32" TV $1,200
Nordic Track $ 800
Weight Set $ 100
Kids' Rugs $1,000 CT Page 1181
Living Room Rug $ 800
Range $ 750
Lighting Fans $ 600
Swing Set Woods $ 600
Wn.er $ 600
Dryer $ 500
Swing Set Plastic $ 500
Zachary's Bed $ 500
VCR Mitsubishi $ 400
VCR $ 300
19" TV $ 200
TOTAL $20,750
Manifestly the majority of these items concern themselves with the furnishings of the home, appliances, therein and items pertaining to the children and home entertainment.
Defendant's Exhibit B appears to verify the $2200.00 loan from Lisa Bennett to the Defendant. Defendant's Exhibit D establishes the balance due on the second mortgage to Charter Oak Federal Credit Union in the amount of $31,084.99.
Mindful of the Defendant's testimony of his intention to make a complaint to the Division of Children and Families regarding the care accorded to the children by the Plaintiff, the Court required that a statement be secured from the attorney for the minor children, Ramona DeSalvo, to be certain that the agreement between the parties as to care and custody of the minor children was in their best interest.
The statement of counsel for the children, exhibit 1 for the minor children, is set forth herein.
January 5, 1999 CT Page 1182
To: Attorneys Traystman and Chamberlain
RE: Kinney
 Counsel has contacted me in an effort to resolve a matter which has arisen at trial. Mr. Kinney apparently has testified that he questions Mrs. Kinney's methods of discipline.
 Mr. Kinney never followed up and contacted me or raised issues with me or the court although I made several requests for him to come in for an appointment to discuss the many allegations that he was claiming through counsel. He neglected to make an appointment nor did I ever see any substantiation of this claims. I have no hesitation in recommending the agreement of the parties based on my positive meetings with Mrs. Kinney and my prior involvement with the file.
 My appointment stays in effect. Either party can continue to contact me with regard to any issues post judgment and if a modification is necessary in the best interests of the children, I will be happy to file the same.
Very truly yours,
/s/ Ramona E. DeSalvo
Ramona E. DeSalvo
Defendant's Exhibit C, copies of slips allegedly verifying support payments are unclear, not all in sequence and some are illegible.
 DISCUSSION
This is a marriage of approximately nine and one half years with two small children ages 5 1/2 and 3 1/2 issue thereof.
The statements of condition from which relief from abuse was sought in the file are distressing.
The Plaintiff, based on the testimony, has apparently been a CT Page 1183 steady hard worker as a legal secretary and contributed to the family's financial stability.
In addition, the Plaintiff used her entire inheritance plus that of the children for the purpose of acquiring a home, furnishing the same and paying bills and expenses.
Except for the testimony of the Defendant, there was no independent evidence from any neutral or third party as to any lack of care of the children or the immoderate use of alcohol by the Plaintiff.
It appears that the precipitating cause of the breakdown of the marriage was the Defendant's announcement that he was in love with someone else and intended to live with that person.
 THE LAW
The Court has considered all of the statutes which apply in matters of this nature which include, without limitation, Connecticut General Statutes (C.G.S.) § 46b-56 et seq., regarding custody and visitation, C.G.S. § 46b-62 regarding attorney's fees, C.G.S. § 46b-82 regarding alimony, C.G.S. § 46b-84 regarding child support. The Court has considered all of the applicable case law that govern the matter.
The Court has considered the testimony of the parties, their candor or lack thereof, and all exhibits and the arguments of counsel.
Based on the testimony at trial, the recommendations of the attorney for the minor children and the foregoing findings of fact, the Court enters the following orders.
By the express agreement of the parties and their respective counsel and the attorney for the minor children:
There shall be joint legal custody of the two minor children, Courtney L. Kinney born May 14, 1993 and Zachary M. Kinney born May 15, 1995.
The primary residence of the minor children shall be with the Plaintiff mother who shall be the primary custodial parent.
The Defendant father shall have reasonable rights of CT Page 1184 visitation to specifically include his two rotating days off work for 48 hours or every other weekend from Friday at 7:00 p. m. through Sunday at 7:00 p. m., one-half of the summer school vacation, one-half of each school week-long vacation, every other holiday on an annual reciprocal basis with the Defendant having Christmas Eve and Christmas morning 1999 and Plaintiff having Christmas morning 1998.
Support for the minor children in accordance with the guideline worksheet prepared by the Defendant's counsel in the amount of $147.00 weekly, which shall be secured by a wage garnishment.
The Defendant to remain in his vehicle when picking up or returning the children.
The parties may have contact regarding major decisions regarding the children and in emergencies.
The Defendant shall pay the Plaintiff $40.00 a week as alimony for a period of four years to terminate earlier upon the death of either party, the remarriage of the Plaintiff or the Plaintiff's cohabitation with an unrelated male pursuant to C.G.S. § 46b-83. The alimony is non-modifiable as to term. In considering the issue of alimony, the Court has considered the length of the marriage, the cause of the dissolution, the age, health, station, occupation, employability, estate and needs of the parties.
The Court has considered the standard of living of the parties.
The Court has considered the same standard in determining the assignment of marital property.
The Court, in endeavoring to treat both parties fairly, is mindful of its obligation to consider the welfare and best interests of the children and try to keep a roof over their heads.
The testimony and the exhibits are unclear and lacking with regard to the Plaintiff's claims as to a $350.00 arrearage for alimony and a claim of $1,096.00 for support arrearage.
The Court notes that a wage execution has been in effect for CT Page 1185 some considerable time.
The Court, on the basis of what is available to it on the issue of arrearages, makes no finding thereon.
The Defendant shall forthwith quitclaim all of his rights, title and interest in and to the marital residence located at 41 Kanahan Road, Lisbon to the Plaintiff and the Plaintiff shall be responsible for the mortgages, taxes and insurance and any other obligations and maintenance associated with the property and hold the Defendant harmless therefrom.
The Plaintiff may retain her 401K plan in the approximate amount of $10,000.00 or any accretions thereto.
The Plaintiff may retain the $120.00 shown in her People's Bank account.
From the list of items noted above claimed by the Defendant, the Defendant may have the computer and desk, the Nordic Track and the weight set.
All of the remaining items may be retained by the Plaintiff as necessary to a proper furnishing of the premises and in the welfare of the two children.
Aside from the items shown on said list, the Plaintiff may retain any other furnishings in the residence.
Any tools, clothing or personal effects belonging to the Defendant shall be returned to him.
The Defendant shall maintain medical and dental insurance for the benefit of the minor children as is presently available to him through his employment and he shall provide medical and dental insurance for the Plaintiff as available through his employment but at her cost and expense for the allowed statutory period of 36 months.
Any unreimbursed health-related expenses related to the children shall be shared equally by the parties.
The Defendant shall turn over to the Plaintiff any reimbursement checks in his possession relative to medical expenses incurred or related to the Plaintiff and her past CT Page 1186 treatment.
The Plaintiff and the Defendant shall maintain and keep in effect life insurance as is available to them incident to their employment with the children as irrevocable beneficiaries.
Any such insurance shall not be encumbered, pledged or borrowed against.
The parties shall be jointly responsible for any statement from Attorney DeSalvo, counsel for the minor children.
Any children's clothes presently in the possession of the Defendant shall be returned to the Plaintiff.
The Plaintiff presently has no motor vehicle of her own and cannot be expected to use her sister's vehicle forever.
Because of her employment and her responsibility for the children, the Plaintiff must have some reasonably reliable vehicle.
The 1995 Jeep is apparently beyond the Court's reach and the Defendant also requires a vehicle to maintain his employment.
The Court cannot allow a condition where the Plaintiff's employment is threatened or the children's welfare imperiled because she has no means of transportation and the Defendant drive a $25,000.00 vehicle, the payment for which rests on the second mortgage.
The Defendant must either sell the 1998 Dodge for the best price possible and share the net proceeds equally with the Plaintiff so that she can acquire a safe vehicle or, in the alternative, provide the Plaintiff the sum of $6,500.00 in order that she may use said sum to acquire in whole, or in part, a suitable and safe motor vehicle, this is to be accomplished within 90 days from the date hereof.
The Defendant may claim that the supposed equity in the residence could be resorted to, to secure funds for the Plaintiff to secure a motor vehicle, but in the Court's opinion it is unrealistic to believe that a third mortgage could be secured, and even if that was done the Plaintiff, based on her earnings, could not carry the payments and would probably lose the home. CT Page 1187
The Court also notes that the only information available as to the value of the home was the testimony of the parties; the Court was not presented with a written appraisal nor did a realtor testify.
Each of the parties shall be responsible for the payment of their respective attorney's fees.
The Plaintiff and the Defendant shall each be entitled to take one child as an exemption for income tax purposes.
Each party shall pay the debts shown on their financial affidavits.
This petition for dissolution and the hearing thereon extending over two days was emotional and tearful. In the Defendant's proposed orders he requests that the Plaintiff grant him a mortgage on the residence for $15,000.00, admittedly not to be paid until certain occurrences or the passage of certain time, but the Court observes that the marriage, while not perfect, was relatively stable until the Defendant professed his love for Lisa Bennett.
The precipitating factor for the dissolution, therefore, must rest at the Defendant's door.
The Court is satisfied that each of the parties has an abiding love and affection for the children.
The Court has reminded each party that "a parent is forever."
The Court is mindful that the original complaint requested a change of name for the Plaintiff but no such request was made at trial or in the proposed orders and the Court proceeds on the premise that the Plaintiff wishes to retain her married name for the welfare of the children.
The marriage is dissolved on the grounds of irretrievable breakdown and the parties are declared to be single and unmarried. C.G.S. § 46b-40c.
Austin, J.T.R.